■ Maryruth Louise Ingersoll, Respondent, v Barton Robert Ingersoll, Appellant. [927 NYS2d 420]—

McCarthy, J.

The parties were married in 1974. Plaintiff commenced this divorce action in April 2010. Thereafter, plaintiff moved for, as relevant here, an award of temporary maintenance. Supreme Court found that plaintiff had a total monthly income of $4,770.93 while defendant had a monthly income of $8,900. The court partially granted plaintiff's motion to the extent of awarding her monthly temporary maintenance in the amount of

$697.44 based on the statutory formula now set forth in Domestic Relations Law § 236 (B) (5-a). Defendant appeals.

Supreme Court should not have relied on Domestic Relations Law § 236 (B) (5-a). That subdivision, enacted in August 2010, became effective 60 days after enactment and applies only to matrimonial actions commenced after the effective date (*see* L 2010, ch 371, §§ 1, 6). As this action was commenced in April 2010, Domestic Relations Law § 236 (B) (5-a) is inapplicable (*see Milbrandt v Green Refractories Co.*, 79 NY2d 26, 32 n 1 [1992]; *Browning v County Fence Co.*, 259 AD2d 578, 579 [1999]).

Nor can Supreme Court's order be upheld under the correct statutory standard. Under Domestic Relations Law § 236 (B) (former [6] [a])—which applies to this action (*see* L 2010, ch 371, §§ 2, 6)—a court may "order temporary maintenance . . . in such amount as justice requires." A court awarding temporary maintenance must "consider the respective financial conditions of the parties and the reasonable needs of the party seeking support pending trial" (*Quarty v Quarty*, 74 AD3d 1516, 1517 [2010]). The court must also articulate the "considerations underlying the determination" (*Sedlack v Sedlack*, 298 AD2d 691, 692 [2002]; *see* Domestic Relations Law § 236 [B] [former (6) (b)]; *Quilty v Quilty*, 169 AD2d 979, 979-980 [1991]). Here, Supreme Court recited the respective monthly income of the parties but gave no reason for the award except that it was dictated by Domestic Relations Law § 236 (B) (5-a), which the court acknowledged was not yet in effect. Although pendente lite awards should not ordinarily be modified on appeal "unless the ordered payments prevent the payor spouse from meeting his or her own financial obligations or where justice otherwise requires" (*Quarty v Quarty*, 74 AD3d at 1516-1517), we cannot affirm an order that "fail[s] to set forth the statutorily required reasoning" (*Quilty v Quilty*, 169 AD2d at 980; *see* Domestic Relations Law § 236 [B] [former (6) (b)]; *Meyer v Meyer*, 173 AD2d 1021, 1023 [1991]; *LoMuscio-Hamparian v Hamparian*, 137 AD2d 500, 501 [1988]). Nevertheless, because our "authority is as broad as that of the Supreme Court," we need not remit this issue for further proceedings but instead will consider plaintiff's motion de novo (*Wagner v Wagner*, 175 AD2d 391, 392 [1991]; *see Quarty v Quarty*, 74 AD3d at 1517; *Quilty v Quilty*, 169 AD2d at 980).

On their statements of net worth, both parties claim that their expenses exceed their income. Plaintiff is retired, but receives a pension of $3,606.21 per month, plus $500 per month in rental income. Although defendant asks us to impute additional income based on plaintiff's earning potential, plaintiff

claims to be medically unable to work and we will credit this sworn statement until the issue is resolved at trial (*see Colley v Colley*, 200 AD2d 839, 841 [1994]). Plaintiff estimates her monthly expenses at $6,851.21. However, several of these expenses appear to be annual totals or are manifestly unreasonable. For instance, plaintiff claims to have monthly expenses of $100 for "carpet cleaning solution & machine," $150 for "lawn seed/fertilizer," $250 for car registrations and licenses and $1,400 for vacations. She also claims to spend $150 per month on "cell phone, car rental, [and] airfare" in addition to the vacation expenses described above and a separate entry of $90 per month for "[t]elephone/cell." After subtracting the duplicative expenses and amortizing the other questionable expenses, plaintiff's estimated reasonable monthly expenses total $4,959, which is about $853 more than her monthly income. We must now accommodate these needs with defendant's ability to pay (*see Fox v Fox*, 290 AD2d 749, 750 [2002]).

Defendant earns a gross salary of $9,461.25 per month, but claims to have $9,901.17 in monthly expenses. Although his largest expenses—totaling more than half of his income—include mortgage and rent payments and tax, Social Security and Medicare deductions, he also lists several expenses that appear unnecessary or excessive. We find that his income is sufficient to meet his expenses and that an award of temporary maintenance will not render him unable to afford basic necessities (*compare Quarty v Quarty*, 74 AD3d at 1517).

Finally, the parties enjoyed a high standard of living while they were together (*see Fox v Fox*, 290 AD2d at 750). Prior to their separation, the parties owned two houses, four cars, a boat and a one-third interest in a business. As plaintiff's reasonable needs—as set forth above—exceed her income by $853 per month while defendant's income is substantially higher and sufficient to cover his expenses, we grant plaintiff's motion to the extent of awarding her $425 per month in temporary maintenance (*see* Domestic Relations Law § 236 [B] [former (6)]; *Quarty v Quarty*, 74 AD3d at 1517; *MacKinnon v MacKinnon*, 245 AD2d 676, 678 [1997]). Although this award may require both parties to make some sacrifices, it reasonably accommodates plaintiff's needs with defendant's means.

Defendant's remaining contentions have been considered and found to be without merit or academic in light of our decision.

Peters, J.P., Rose, Lahtinen and Malone Jr., JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reducing defendant's payment of temporary maintenance to $425 a month, and, as so modified, affirmed.